UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

UNITED STATES OF AMERICA

      - against -              08 Civ. 7512 (JGK)

CHRISTIAN VIERTEL,           MEMORANDUM OPINION AND
                                  ORDER
                Defendant.
————————————————————————————

JOHN G. KOELTL, District Judge:

On October 2, 2002, at the conclusion of a jury trial, the petitioner, Christian Viertel, was convicted on each count of a three-count indictment charging conspiracy to commit mail fraud and wire fraud, as well as substantive counts of mail fraud and wire fraud.  The petitioner now moves pro se to vacate or set aside his conviction and sentence under 28 U.S.C. § 2255.


I

Familiarity with the facts and procedural history of the case are assumed and details are recounted to the extent necessary to decide the present petition.  Many of these facts are set forth in the Court's prior Opinion and Order dated May 5, 2005.  See United States v. Viertel, No. 01 Cr. 571, 2005 WL 1053434 (S.D.N.Y. May 5, 2005).

The original indictment in this case charged the petitioner, along with Fritz Blumenberg and John Lee, with

conspiring to commit mail and wire fraud in connection with the submission of false invoices to Burda Media, Inc., the New York press office for Burda Holding, a magazine and newspaper publisher in Germany.  The indictment also charged the three defendants with substantive counts of mail and wire fraud in connection with the false invoice scheme.  A superseding indictment filed on February 14, 2002 added two counts of tax evasion against Mr. Blumenberg, the President of Burda Media who maintained substantial control over the company's New York office, including its finances.  Mr. Blumenberg pleaded guilty to the charges in Indictment S1 01 Cr. 571 on April 5, 2002 and later testified before the Grand Jury pursuant to a grant of immunity.  See id. at *1.

The Grand Jury subsequently returned Indictment S2 01 Cr. 571 against the petitioner and Mr. Lee on June 6, 2002.  The indictment charged the petitioner with conspiring with Mr. Blumenberg to commit mail and wire fraud by submitting false invoices to Burda Media from five companies owned by the petitioner (the "Viertel companies").  The indictment also charged the petitioner with substantive counts of mail and wire fraud in furtherance of the conspiracy.  See id.

The petitioner's trial began on September 12, 2002.  There was substantial evidence at trial that false invoices were submitted to Burda Media from the Viertel companies –

2

Transvideo, TV Broadcast Center, Inc., Eurocast Corp., Telcopa Ltd., and Agate Reality Corp.  Burda Media employees testified that they had never heard of most of the Viertel companies, had never seen work product from the companies to justify the invoices, and had never seen invoices from some of the companies.  Moreover, the witnesses testified that the invoices described work that Burda Media had never requested and had no reason to request.  The evidence also established that some of the invoices were paid by checks made out to "cash" or to the Viertel companies and that the checks payable to the companies were deposited into bank accounts controlled by the petitioner. The petitioner, through his own accounts and those of the Viertel companies, made payments to Mr. Blumenberg, often by direct payment of Mr. Blumenberg's bills.  See id. at *2.

The evidence reflected that Burda Holding funded Burda Media by wiring money from Germany to Burda Media's New York bank account whenever that account fell below a certain level. Burda Media sent paid invoices from New York to Germany by Apex Air Freight on a monthly basis in order to document its expenses.  Fraudulent invoices created for the Viertel companies were sent by interstate carrier from New York to Germany on a monthly basis, and regular interstate wires from Germany to New York funded the payments that Burda Media made to the petitioner and Mr. Blumenberg.  See id.

Mr. Blumenberg frequently directed Ellen Kiefer, treasurer at Burda Media, to cash checks in payment of invoices from the Viertel companies and to provide that cash to Mr. Blumenberg. Ms. Kiefer became suspicious, and in or about May 1996, advised Burda Holding's attorneys of her concerns. Ms. Kiefer was instructed by these attorneys to continue "business as usual" and not to "change anything while they were investigating." See id.

On June 18, 1996, in a handwritten note, Mr. Blumenberg instructed Ms. Kiefer to issue a check to Agate Reality Media Services for $8120.10 that the petitioner would pick up later that day. Ms. Kiefer issued the check on June 18, 1996, and it was deposited into a bank account controlled by the petitioner the same day. The petitioner deposited this check into his bank account, which depleted Burda Media's bank account and led Burda Holding, on June 24, 1996, to wire $350,000 to Burda Media in order to replenish Burda Media's accounts. On or about June 28, 1996, Ms. Kiefer mailed either a copy of or the original Agate Reality invoice from Burda Media in New York, to Burda Holding in Germany as part of the routine mailing of all invoices. The June 24, 1996 wire of cash from Germany to New York and the June 28, 1996 mailing of the Agate Reality invoice provided the jurisdictional predicates for the substantive wire and mail fraud counts against the petitioner. See id.

4

At trial, counsel for the petitioner advanced the theory
that the petitioner was in fact a victim of Mr. Blumenberg.  The
petitioner argued that Mr. Blumenberg submitted false invoices
to Burda Media from the Viertel companies and then pocketed the
proceeds or deposited Burda Media's payment checks into the
companies' accounts as loan repayments to the petitioner – all
without the petitioner ever knowing that the funds were the
product of the submission of fictitious invoices.  The
Government challenged the petitioner's loan repayment theory and
instead portrayed the payments as kickbacks.  See id. at *3.

At the conclusion of the Government's case, the petitioner
made a motion for dismissal of the charges and entry of a
judgment of acquittal pursuant to Federal Rule of Criminal
Procedure 29.  With respect to the mail and wire fraud charges,
the petitioner argued that Burda Holding already knew of the
fraud at the time of the June wiring and mailing, and that
neither of these acts truly advanced the fraud.  The petitioner
also argued that he had received payment for the Agate Realty
invoice before the mailing occurred and that the evidence did
not establish that the June 18, 1996 check to Agate Realty had
triggered the subsequent June 24, 1996 wire.  With respect to
the conspiracy charge, the petitioner argued that the evidence
did not show that he had seen the actual invoices or that he

knew that the checks deposited into his bank account were issued

pursuant to fraudulent invoices.  See id.

The Court denied the defendant's Rule 29 motion.  The Court

noted:

> [The alleged mail and wire fraud scheme] was not simply
> fraud by which a payment was made but a scheme whereby the
> funds to obtain the money for the payment would be
> obtained from Burda in Germany such that, pursuant to the
> scheme, an invoice would be sent to Germany, where it
> would be kept, and that the funds of Burda in New York
> would be replenished by wires from Burda in Germany such
> that Burda in New York would have sufficient ongoing
> funds.

See id.

The Court also noted that there was sufficient evidence

from which the jury could find that there was an agreement

between the petitioner and Mr. Blumenberg to engage in a scheme

to defraud and that the scheme to defraud had as its objects

mail fraud and wire fraud.  On October 2, 2002, the jury

returned a verdict finding the petitioner guilty on all three

counts of the indictment.  See id.

On June 9, 2003, the Court sentenced the petitioner to a

term of twenty-one months' incarceration, to be followed by

three years' supervised release, restitution in the amount of

$345,673.96, a fine in the amount of $5,000, and a mandatory

$300 assessment.  At sentencing, the Court rejected the

petitioner's argument that the checks issued by Burda Media and

deposited into the petitioner's bank accounts were actually

repayments of personal debts that Mr. Blumenberg owed to the
petitioner.  The Court noted that the Government had shown by
more than a preponderance of the evidence that the petitioner
had participated with Mr. Blumenberg in the fraud, and that the
bank accounts of the petitioner and his wife were used to siphon
money from Burda Media.  The frequency of the payments into
these accounts, the odd amounts of the payments, and the fact
that a number of the checks had been endorsed by the petitioner
and his wife, indicated that the accounts were used to
facilitate the fraud and that the petitioner was in fact aware
of the fraud.  The restitution amount, $345,673.96, represented
the total amount deposited into the various bank accounts
controlled by the petitioner.  The Court also rejected the
petitioner's request for a minor participant downward adjustment
based on the long-standing and repeated nature of the fraud in
which the petitioner was a key participant.  See id.

The petitioner subsequently appealed his conviction,
arguing that the evidence was insufficient to support the mail
and wire fraud convictions because the June mailing and the June
wire did not further the scheme to defraud; that the Government
misled the jury concerning the elements of mail and wire fraud;
and that the evidence was insufficient to establish the
conspiracy convictions because no overt act occurred within the
statute of limitations period.  The Court of Appeals for the

7

Second Circuit affirmed the petitioner's conviction by summary
order on May 28, 2004.  See United States v. Viertel, 98 Fed.
Appx. 68 (2d Cir. 2004).  The petitioner filed a petition for
rehearing, which was denied by the Court of Appeals on June 21,
2004.

On September 12, 2004, the petitioner moved in this Court
pursuant to Federal Rule of Criminal Procedure 33 for a new
trial based on alleged newly discovered evidence.  The
petitioner presented five pieces of alleged newly discovered
evidence that he argued merited a new trial or an evidentiary
hearing.  The first piece of alleged newly discovered evidence
was comprised of purported transcripts from German police
interviews of Wolfgang Maginot, a Group Controller of Burda
Holding.  The petitioner argued that these transcripts proved
that Mr. Maginot had carried the original fraudulent Agate
Reality invoice to Germany and therefore Ms. Kiefer could not
have mailed that invoice to Germany, removing the jurisdictional
predicate for the mail fraud charge against the petitioner.  The
second piece of evidence was the purported original copy of the
Agate Reality invoice.  The petitioner argued that certain
discrepancies between this original copy and the copy of the
Agate Reality invoice admitted in evidence as Government Exhibit
501 indicated that the invoice admitted in evidence had been
corrupted by the Government; this purportedly also cast doubt on

8

the predicate mailing.  The third piece of evidence was a purported "waybill" issued by Lufthansa on June 28, 1996.  The petitioner argued that this waybill proved that Lufthansa, rather than Apex Air Freight, carried the Agate Realty invoice. The fourth piece of evidence was a 1996 audit of Burda Media which described the company as "self-sustaining."  The petitioner argued that this description belied the Government's theory as to how Burda Media was funded with wire transfers from Burda Holding.  The fifth piece of evidence was purported proof that a building address that was used as a false address for Telcopa was formerly linked to Mr. Blumenberg in the 1970s.  See Viertel, 2005 WL 1053434, at *6-*9.

By Opinion and Order dated May 5, 2005, the Court denied the petitioner's motion, reasoning that none of the items of alleged newly discovered evidence was so material that it would probably lead a jury to acquit the defendant, and that many of the items could have been discovered before or during the trial with the exercise of due diligence.  See id.  The Court also noted that the petitioner had requested re-sentencing, and that the Court would consider any issues raised in connection with this request separately when they had been fully briefed.  See id. at *4.  By Memorandum Opinion and Order dated August 3, 2005, the Court denied the petitioner's request for re-sentencing, holding that the sentence it had imposed was

9

reasonable.  See United States v. Viertel, No. 01 Cr. 571, 2005
WL 1844774 (S.D.N.Y. Aug. 3, 2005).

The petitioner appealed this Court's denial of his motions
for a new trial and for re-sentencing.  He argued that this
Court should have granted a new trial based on the alleged newly
discovered evidence; that his sentence was unreasonably lengthy
because this Court had relied upon the total amount of loss
which it found attributable to the petitioner, when it should
have relied upon the amount of the transaction which formed the
basis for the wire fraud counts; and that his sentence was
unconstitutional because it was based upon judge-found facts.
On September 26, 2007, by Summary Order, the Court of Appeals
affirmed the decisions of this Court with respect to the Rule 33
motion and the request for re-sentencing.  See United States v.
Viertel, 242 Fed. Appx. 779 (2d Cir. 2007).

On April 15, 2008, the petitioner timely filed this
petition under 28 U.S.C. § 2255 to vacate or set aside his
conviction and sentence.  On June 24, 2008, the petitioner
supplemented his petition in a document entitled "Third Judicial
Notice."  Pursuant to the Court's June 25, 2008 Order, the
Government responded to the arguments made in the Third Judicial
Notice together with the arguments made in the April 15, 2008

petition, and the Court considers the arguments made in both
documents.[1]

## II

"The grounds provided in section 2255 for collateral attack
on a final judgment in a federal criminal case are narrowly
limited, and it has 'long been settled law that an error that
may justify reversal on direct appeal will not necessarily
support a collateral attack on a final judgment.'" Napoli v.
United States, 32 F.3d 31, 35 (2d Cir. 1994) (quoting United
States v. Addonizio, 442 U.S. 178, 184 (1979)).  "[A] collateral
attack on a final judgment in a criminal case is generally
available under § 2255 only for a constitutional error, a lack
of jurisdiction in the sentencing court, or an error of law or
fact that constitutes 'a fundamental defect which inherently
results in complete miscarriage of justice.'" United States v.
Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United
States, 368 U.S. 424, 428 (1962)).  In addition, "[i]t is well
established that a § 2255 petition cannot be used to relitigate
questions which were raised and considered on direct appeal."

---

[1]     The petitioner has also submitted, in support of his petition, a
document purporting to be a motion pursuant to Federal Rule of Civil
Procedure 60(b)(3) for relief from the judgment against him on the basis of
the Government's alleged fraud.  Rule 60(b)(3) does not apply to the
petitioner's criminal conviction.  In any event, the Court has read the
document and determined that it does not materially add to the arguments
already made in the petition and Third Judicial Notice.

United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (internal quotation marks omitted); see also Riascos-Prado v. United States, 66 F.3d 30, 33 (2d Cir. 1995) ("It is clear that section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.") (internal quotation marks and alteration omitted).

The bar against relitigating claims extends to claims that could have been raised on direct appeal, but were not.  "In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993); see also United States v. Frady, 456 U.S. 152, 167-68 (1982); Billy-Eko v. United States, 8 F.3d 111, 113-14 (2d Cir. 1993) ("It is well-settled that where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom."), abrogated on other grounds by Massaro v. United States, 538 U.S. 500 (2003).  To satisfy the "cause" requirement, the petitioner must show circumstances "'external to the petitioner, something that cannot be fairly attributed to him.'"  Marone, 10 F.3d at 67 (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)) (emphasis omitted).  Cause may be

demonstrated with a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that interference by Government officials made compliance impracticable, or that the procedural default was the result of ineffective assistance of counsel.  Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994); Akwuba v. United States, Nos. 01 Civ. 3057, 96 Cr. 1159, 2007 WL 1789010, at *4 (S.D.N.Y. June 20, 2007). Attorney ignorance or inadvertence does not constitute cause. See Coleman v. Thompson, 501 U.S. 722, 753 (1991); see also Fernandez v. United States, No. 05 Civ. 8514, 2006 WL 2347397, at *2 (S.D.N.Y. Aug. 14, 2006).

The petitioner has also styled his petition as an application for a writ of error coram nobis.  The Supreme Court has instructed that although the writ of coram nobis survived the enactment of § 2255, the writ is available only in truly extraordinary circumstances.  See United States v. Morgan, 346 U.S. 502, 510-11 (1954).  The Court of Appeals for the Second Circuit has explained:

> [The writ of error coram nobis is] not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid.  United States v. Carter, 437 F.2d 444, 445 (5th Cir. 1971) (per curiam) (citation and internal quotation marks omitted).  A district court may issue a writ of coram nobis pursuant to the All Writs Act, 28 USC § 1651(a),

> where "extraordinary circumstances are present." Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992). The proceedings leading to the petitioner's conviction are presumed to be correct, and "the burden rests on the accused to show otherwise." United States v. Morgan, 346 U.S. 502, 512 (1954); Nicks, 955 F.2d at 167. A petitioner seeking such relief must demonstrate that (1) there are "circumstances compelling such action to achieve justice," id. at 167 (citation and internal quotation marks omitted), (2) "sound reasons exist [ ] for failure to seek appropriate earlier relief," Morgan, 346 U.S. at 512, and (3) the petitioner "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Nicks, 955 F.2d at 167.

Foont v. United States, 93 F.3d 76, 78-9 (2d Cir. 1996); see also Chacko v. United States, No. 96 Cr. 519, 2005 WL 1388713, at *2-*3 (S.D.N.Y. June 8, 2005).


III

In support of his petition to vacate or set aside his conviction and sentence, the petitioner raises fourteen claims in his petition and eight additional, although largely overlapping, claims in his Third Judicial Notice. The Court addresses each of these claims in turn.

The petitioner's first claim is that the "Judgment on RECORD is plainly FALSE and UNSUPPORTED by the real jury issued verdict form." The essence of this claim is that it was error for the Court, rather than the jury, to find facts at sentencing. This claim is barred because it was already raised and rejected on direct appeal. In any event, the claim is

without merit because a sentencing court is entitled and indeed
obligated to make its own factual findings, using a
preponderance of the evidence standard.  See United States v.
Gonzales, 407 F.3d 118, 125 (2d Cir. 2005); see also United
States v. Barnes, Nos. 03 Cr. 1238, 05 Cr. 116, 2008 WL 857520,
at *3 (S.D.N.Y. Mar. 31, 2008).  In the course of presenting
this first claim, the petitioner also seems to accuse the
Government and the Court of waging a campaign of wrongful
actions against him, including pilfering the petitioner's home.
The petitioner fails to provide any details as to these
accusations, there are no facts in the record to support them,
and they appear to be unrelated to any legal argument.
Therefore they do not constitute a basis for relief under 28
U.S.C. § 2255.

     The petitioner's second claim is that the "Indictment is
equally VOID for Failure to File a TRUE BILL in Open Court
because it resulted in prejudice to the petitioner."  The thrust
of this claim appears to be that the indictment was not returned
in open court.  This claim is barred because the petitioner
failed to raise it on direct appeal and has not shown a cause
for this procedural default.  The claim is also without merit,
because there are no facts in the record to support it.  Indeed,
in a Memorandum Opinion and Order dated August 16, 2007, this
Court held that there was "no asserted basis" for a claim that

the indictment was not returned in open court.  See United
States v. Viertel, No. 01 Cr. 571, 2007 WL 2351063, at *1
(S.D.N.Y. Aug. 16, 2007).  Moreover, as the Court noted in the
August 16, 2007 Memorandum Opinion and Order, "the failure to
return the indictment in open court would not constitute a
constitutional violation requiring the Court to vacate the
conviction based on an allegedly defective indictment."  Id.
(internal quotation marks omitted).

The petitioner's third claim is that "[t]he subject
Superceder Indictment 'S2' is not a TRUE BILL, INVALID as a base
for a Non-prejudicial trial due to untolled lapses of the 5-year
statutory LIMIT for 'charged acts' and untenable 'overt acts.'"
Despite the title of this claim, the petitioner does not argue
that the indictment charged conduct outside of the five year
statute of limitations.  Rather, the first part of the claim
alleges that the Grand Jury was convened at the "11th hour" as a
result of a conspiracy between the Burda Media lawyers and the
United States Attorney.  This claim is barred because the
petitioner failed to raise it on direct appeal and has not shown
a cause for this procedural default.  Moreover, the claim is
without merit because there are no facts to support it.  The
second part of the claim, which explicitly refers back to the
petitioner's Rule 33 motion for a new trial based on newly
discovered evidence, appears to allege that the Government used

16

a corrupted version of the Agate Reality invoice as Government
Exhibit 501 at trial, rather than the original invoice or an
accurate copy of the original invoice.  This claim is barred
because it was already raised in the petitioner's motion for a
new trial, was rejected by this Court, and this Court's Order
was affirmed by the Court of Appeals.[2]  See Viertel, 2005 WL
1053434, at *7-*8.  In any event, the claim has no merit because
there are no facts to support the accusation that the Government
falsified the evidence.  It should also be noted that the
petitioner's general denunciation of the quality of the
jurisprudence in this circuit does not constitute a basis for
relief under 28 U.S.C. § 2255, and does nothing to further his
claim.

The petitioner's fourth claim largely repeats the third:
the Government effectuated a "Constructive Amendment of the
Indictment" by substituting a corrupted version of the Agate
Reality invoice as Government Exhibit 501 at trial for the true
version, which was used before the Grand Jury and on which the

---

[2]     The petitioner gives the claim about the Government using corrupted
evidence a new twist in the petition: the use of a corrupted version of the
Agate Invoice at trial retroactively made the use of the actual invoice
before the Grand Jury deceptive to the grand jurors.  To the extent that this
version of the claim is distinct from the claim that was previously raised
and rejected, the claim is nonetheless barred because the petitioner has
shown no cause why it was not raised on direct appeal.  Moreover, a challenge
to the sufficiency, reliability or competence of evidence before the Grand
Jury will not be heard.  See United States v. Williams, 504 U.S. 36, 54
(1992); United States v. Casamento, 887 F.2d 1141, 1182 (2d Cir. 1989);
United States v. Bok, No. 95 Cr. 403, 1997 WL 148815 (S.D.N.Y. Mar. 27,
1997), aff'd, 156 F.3d 157 (2d Cir. 1998).

indictment was based.  In this iteration of the claim, the petitioner states that he did not raise this issue below or on direct appeal, and offers as a purported cause for his failure to do so a general denunciation of lawyers appointed under the Criminal Justice Act.

This allegation is not materially different from the claim that this Court already rejected in denying the petitioner's Rule 33 motion, an Order that was affirmed by the Court of Appeals.  Moreover, this claim also fails because, to the extent it is different from the prior claim, there is no reason that it could not have been raised on direct appeal.  The indictment and Government Exhibit 501 were plainly available to counsel at trial and on appeal.  See id. at *7-*8.  Any argument about a difference between Government Exhibit 501 and the indictment could plainly have been raised on direct appeal.  Although the ineffective assistance of counsel may constitute cause for the failure to raise a claim on direct appeal, the plaintiff has failed to demonstrate the ineffective assistance of counsel in this case.  To prevail on a claim for the ineffective assistance of counsel, a petitioner must show both (1) that his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's deficient performance was prejudicial to the petitioner's case.  See Strickland v.

Washington, 466 U.S. 668, 687-88 (1984); Gersken v. Sankowski, 426 F.3d 588, 607 (2d Cir. 2005).  Self-serving conclusory allegations to this effect are insufficient to establish ineffective assistance of counsel.  United States v. Torres, 129 F.3d 710, 715-17 (2d Cir. 1997); United States v. Gonzalez, 970 F.2d 1095, 1099-1101 (2d Cir. 1992).  The petitioner has failed to show that the performance of his counsel was deficient.  See Viertel, 2005 WL 1053434, at *8.  Moreover, the petitioner cannot show that he was prejudiced by his attorneys' failure to raise his claim about the Government's purported corruption of evidence or his claim of a constructive amendment of the indictment because he has failed to show that these allegations have any merit.  See United States v. Danielson, 199 F.3d 666, 670 (2d Cir. 1999) (no constructive amendment where the allegations and proof substantially correspond); see also United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999); cf. Holmes v. Strack, No. 96 Civ. 5901, 1997 WL 232323, at *2 (S.D.N.Y. May 7, 1997) ("Because we find that the affirmative defense was unlikely to have succeeded, we cannot say that Holmes was prejudiced by his attorney's failure to assert it at trial.").

The petitioner also appears to argue in support of his Constructive Amendment claim that the indictment specified that the charges were based upon the mailing of original documents, and original documents were not used in the presentation of

evidence at trial.  This argument also fails, both because the petitioner failed without cause to raise it on direct appeal, and because the indictment does not specify whether the mailing involved original documents or copies, rendering the argument baseless.

The petitioner's fifth claim is that "The wire charge was bogus and fabricated by an oppressive government."  This claim is comprised of a series of statements seeking to establish that the evidence did not support the petitioner's conviction.  Some of the statements are difficult to understand, but at best they seem to raise arguments already made and rejected.  For example, the petitioner claims that the alleged newly discovered evidence of an audit showed that Burda Media was self-sustaining, and also claims that the wire was not in furtherance of the fraudulent scheme.  These claims are barred because they were already raised and rejected on the petitioner's motion for a new trial.  This claim may also be a challenge to the sufficiency of the evidence, but that claim was made and rejected on the petitioner's direct appeal.  To the extent, if any, that the petitioner's fifth claim is distinct from claims already raised and rejected on direct appeal, it is barred because the petitioner has failed to show any cause why it was not raised on direct appeal.  In any event, the claim is without merit because the evidence at trial was sufficient to sustain the jury's

20

verdict that the petitioner committed the charged crimes.  The
bare accusation by the petitioner that the Government fabricated
the charged scheme is not a persuasive argument to the contrary.

The petitioner's sixth claim is that "[t]he in-house Burda
printed 'Agate Invoice' was unknown to Petitioner."  This claim
re-alleges that the Court erred in denying the petitioner's Rule
33 motion based on alleged newly discovered evidence that
purportedly showed that the Government used a corrupted version
of the Agate Reality invoice as Government Exhibit 501 at trial,
evidence which purportedly cast doubt on the predicate mailing.
This claim fails for the reasons explained above.  The general
criticisms the petitioner directs toward this Court, the Court
of Appeals, and the United States do not constitute legal
arguments.

The petitioner's seventh claim is that the petitioner "did
not and was unable to participate or approve any of these 3
charged acts, nor was able to 'join' or recognize the untenable
'overt acts.'"  This claim is an admitted "re-assert[ion]" of
the argument that the Government used a corrupted version of the
Agate Reality invoice at trial.  For the reasons explained
above, this claim does not provide a basis for relief.

The petitioner's eighth claim is that "The 'charged'
Courier was not a federal transporter," that is, that Apex Air
Freight was not a private or commercial interstate carrier for

purposes of the mail fraud statute.  This claim is barred
because the petitioner already raised it in his motion for a new
trial.  That motion was denied and the denial was affirmed on
appeal.  In any event, the claim is without merit.  See Viertel,
2005 WL 1053434 at *8.  The petitioner also claims in a footnote
that purported evidence that Mr. Maginot hand-carried the
original Agate Reality invoice to Germany undermined the
predicate mailing.  This claim is barred because it was raised
and rejected on the petitioner's motion for a new trial and is
without merit.  See id. at *6-*7.

     The petitioner's ninth claim alleges "Court Alpha Error
aggravating prejudice upon Petitioner."  This claim is a
generalized criticism of the Court, which is without any factual
basis, and could have been raised on direct appeal.  This claim
is barred because the petitioner has not offered any cause for
why he failed to raise it on direct appeal.  Moreover, the claim
is without merit because it is conclusory and unsupported by any
facts.  The petitioner also states that there was "no federal
violation" in this case, but that is plainly wrong, because the
petitioner was convicted of violating federal laws – conspiracy
to commit mail and wire fraud and the substantive acts of mail
and wire fraud.

     The petitioner's tenth claim alleges "Court Beta Error
aggravating prejudice upon Petitioner."  The petitioner appears

to argue that the indictment was not returned in open court, and
that the grand jurors may not have understood the charges in the
indictment.  For the reasons explained above, the claim that the
indictment was not returned in open court is barred and is, in
any event, without merit.  The claim that the grand jurors may
not have understood the charges is also barred because the
petitioner has not shown any cause why he did not raise it on
direct appeal.  The claim is also without merit, because it is
conclusory and there are no facts to support it.  Moreover, the
charge is not a basis for challenging the jury verdict against
the petitioner.  See Williams, 504 U.S. at 54; Casamento, 887
F.2d at 1182; Bok, 1997 WL 148815, at *3.

     The petitioner's eleventh claim alleges "Court Delta Error
aggravating prejudice upon Petitioner."  The petitioner appears
to challenge both the venue and the application of federal law
in this case.  Both of these claims are barred because they were
not raised on direct appeal, and there was no cause for this
procedural default.  In any event, both claims are without
merit.  "Venue is proper in any district in which the crime was
committed," United States v. Naranjo, 14 F.3d 145, 146 (2d Cir.
1994), and offenses committed in more than one district may be
prosecuted in any district where the crime was "begun,
continued, or completed," 18 U.S.C. § 3237(a).  With respect to
proper venue over a charge of conspiracy, "venue is proper in

any district in which an overt act in furtherance of the
conspiracy was committed by any of the coconspirators . . . .
The defendant need not have been present in the district, so
long as an overt act in furtherance of the conspiracy occurred
there." Naranjo, 14 F.3d at 147 (internal citation omitted).
In this case, the substantive mail count involved a mailing
between New York, New York and Germany, and the substantive wire
count involved a wire transfer of funds from a bank in Germany
to a bank in New York, New York.  Thus, venue in the Southern
District of New York, which includes Manhattan, was proper.  The
conspiracy count alleged that overt acts in furtherance of the
conspiracy occurred in the Southern District of New York.  The
petitioner also fails to explain why United States federal law
should not apply in this case, which involves federal crimes
that took place in part in the United States.

        The petitioner's twelfth claim alleges that "Another flawed
Court-scheme called PSR violated Petitioner's rights."  The
petitioner appears to accuse the unnamed probation officer who
prepared the Presentence Report of creating a report that
prejudiced the petitioner.  This claim is barred because the
petitioner has failed to provide any reason why it was not
raised on direct appeal, and in any event it is without merit
because there is no evidence to support the accusation against
the probation officer.

The petitioner's thirteenth claim is that "28 June 1948 was a date during a Congressional Recess of the 'do-nothing' Congress.  Public laws falsely claimed to have been codified and 'enacted' by Congress 'assembled' are simply void of validity." The petitioner appears to allege that the federal statutes under which he was charged were not validly enacted by Congress.[3]  This claim is barred because it was not raised on direct appeal and no cause has been shown for this procedural default.  In any event, the claim is plainly frivolous.  The petitioner provides no basis for his contention that the laws at issue were not validly enacted.

The petitioner's fourteenth claim is that "the SDNY is not an Article III Court."  This claim is barred because it was not raised on direct appeal and no cause was provided for this procedural default.  Moreover, the claim is frivolous, because it is beyond dispute that this Court is an Article III Court. See U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); 28 U.S.C. § 112(b) (establishing the judicial district of the Southern District of New York); 28 U.S.C. § 132(a) ("There shall be in each judicial district a district

---

[3]     The petitioner identifies 18 U.S.C. §§ 2, 371, and 1341.  He was also charged under §§ 1343 and 1346.

court which shall be a court of record known as the United States District Court for the district."); see also Koss v. Oneida County, No. 06 Civ. 11386, 2007 WL 127347, at *1 (S.D.N.Y. Jan. 8, 2007) ("Pursuant to Article III, Section 1 of the Constitution, Congress has established one and only one district court for this judicial district, and has directed that it be known as the United States District Court for the Southern District of New York.").

Of the eight claims the petitioner raises in his Third Judicial Notice, the first claim appears to repeat the allegation that the indictment was not returned in open court. For the reasons explained above, this claim fails to provide a basis for relief.  The petitioner also implies that there may not have been a quota of grand jurors to indict him.  This claim is barred because the petitioner offers no cause for why it was not raised on direct appeal, and in any event it is baseless because the petitioner has not supported it with any facts.

The second claim of the Third Judicial Notice presents a series of questions and answers apparently designed to re-allege that the June mailing and the June wire did not further the scheme to defraud.  This claim fails for the reasons explained above.  Moreover, this claim was raised and rejected in the petitioner's direct appeal from his conviction.

The third claim of the Third Judicial Notice accuses the Government of deception and willful ignorance of reality. This claim fails to state a legal argument.

The fourth claim of the Third Judicial Notice appears to allege that the evidence did not support the petitioner's conviction. This claim fails to provide a basis for relief for the reasons explained above. In particular, it was raised and rejected in the petitioner's direct appeal from his conviction.

The fifth claim of the Third Judicial Notice presents a lengthy list of purported facts that reflect alleged sworn statements by Mr. Blumenberg. These alleged statements by Mr. Blumenberg range from background descriptions of Burda Media to denials of the mail and wire charges to alleged exculpations of the petitioner. Many of the alleged statements appear not to relate to any legal argument. To the extent that the alleged statements do pertain to potential legal arguments, they provide no basis for relief. For the most part, the statements simply allege that the evidence did not support the petitioner's conviction. This claim fails for the reasons explained above. To the extent, if any, that the alleged statements of Mr. Blumenberg represent new claims, these claims are barred because the petitioner has shown no cause for why he did not raise them on direct appeal.

The sixth claim of the Third Judicial Notice repeats the allegation that the Government used a corrupted version of the Agate Reality invoice as Government Exhibit 501 at trial.  For the reasons explained above, this claim does not provide a basis for relief.

The seventh claim of the Third Judicial Notice restates the argument that the evidence did not support the petitioner's conviction.  This argument fails for the reasons explained above.  The petitioner also alleges that the Government's decision to prosecute him reflects racial bias, religious bias, and xenophobia.  There is no factual basis asserted for this claim and it is not a basis for any relief.  See United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992); see also United States v. Berrios, 501 F.2d 1207, 1211-12 (2d Cir. 1974).

The eighth claim of the Third Judicial Notice appears to allege that Burda Media's attorneys, rather than the Government, should have been listed in the case caption because the prosecution occurred at their behest, not the Government's.  There are no facts to support the allegation, and no explanation as to how this claim is a basis for relief under 28 U.S.C. § 2255.  In any event, the argument about the caption is barred because the petitioner has not provided any cause why he did not raise it on direct appeal.

CONCLUSION

For all of the foregoing reasons, the petitioner has failed to demonstrate a basis for relief under 28 U.S.C. § 2255, or to show extraordinary circumstances requiring relief under the writ of error coram nobis.  Thus, the petition is **denied**.  The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because the petitioner has failed to make a substantial showing of the denial of a Constitutional right. The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated:      **New York, New York
            January 3, 2009**

John G. Koeltl
United States District Judge

29