**United States District Court**
**Southern District of New York**
_____

**UNITED STATES OF AMERICA,**

    - against -

**CHRISTIAN VIERTEL,**

              Defendant.
_____

**CHRISTIAN VIERTEL,**

               Petitioner

    - against -

**UNITED STATES OF AMERICA,**

              Respondent.
_____

01 Cr. 571-3 (JGK)
08 Civ. 7512 (JGK)

<u>MEMORANDUM OPINION AND
ORDER OF TRANSFER</u>

**JOHN G. KOELTL, District Judge:**

    The Court has received the attached ex parte motion by the petitioner for "Vacatur of Judgment of Conviction grounded upon ab ovo deficit of interstate [§ 1341] jurisdiction over international deliverances [via air cargo export], divesting Federal Courts of adjudicatory powers."  As explained below, the Court determines that the petitioner's motion is a successive petition for habeas corpus within the meaning of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), and therefore in the interests of justice transfers the motion to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1631. <u>See</u> <u>Liriano v. United States</u>, 95 F.3d 119, 123 (2d Cir. 1996).

1

I.

Under the AEDPA, "[b]efore a second or successive application [for habeas corpus] . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A); see also id. at § 2255(h). This requirement includes applications under 28 U.S.C. § 2255 to vacate, set aside or correct a sentence. See, e.g., Negron v. United States, 394 F. App'x. 788, 792 (2d Cir. 2010); Liriano, 95 F.3d at 122-23.

The petitioner has already filed one petition for habeas corpus pursuant to 28 U.S.C. § 2255, which was denied by this Court. See Viertel v. United States, No. 08 Civ. 7512, 2009 WL 22863 (S.D.N.Y. Jan. 5, 2009), Docket No. 3. The Court of Appeals for the Second Circuit denied the petitioner's motion for a certificate of appealability from this Court's denial of the petitioner's § 2255 petition in November 2009. See Viertel v. United States, No. 08 Civ. 7512, Docket No. 7.

The issue is whether the petitioner's current motion for "Vacatur of Judgment of Conviction," which is not explicitly styled as a petition for habeas corpus pursuant to § 2255, should be construed as one, such that it is "a second or successive petition" within the meaning of the § 2244. Where a

2

petitioner has already had a § 2255 motion denied on the merits, a district court may construe the petitioner's subsequent post-conviction motions to vacate the petitioner's sentence as successive § 2255 petitions without providing the petitioner with prior notice and the opportunity to withdraw the subsequent post-conviction motion.  Jiminian v. Nash, 245 F.3d 144, 148 (2d Cir. 2001) (Sotomayor, J.); see also Ching v. United States, 298 F.3d 174, 176 (2d Cir. 2002) (Sotomayor, J.).

Our Court of Appeals has explained that "§ 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence, as it encompasses claims that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.'"  Jiminian, 245 F.3d at 146-47 (quoting 28 U.S.C. § 2255).

The current motion plainly seeks to attack the petitioner's underlying conviction.  The petitioner argues in substance that his conviction was invalid "ab ovo" because the "interstate" element of the mail fraud statute, 18 U.S.C. § 1341, was not satisfied in this case.  (Pet's. Mem. at 1-7.)  The petitioner claims that the Court lacked jurisdiction over him, and asks for "vacatur of the [j]udgment of conviction and for vacatur of the

3

underlying indictment." (Pet's. Mem. at 10.) Because the petitioner's motion is in substance a collateral attack on his underlying conviction, it should be construed as a successive petition pursuant to § 2255, and transferred to the Court of Appeals pursuant to 28 U.S.C. § 1631 for a determination of whether the petitioner may proceed in this Court. Liriano, 95 F.3d at 123.

## CONCLUSION

The Clerk of the Court is directed to transmit this Order and the attached motion to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1631.

SO ORDERED.

Dated:  New York, New York
        January 6, 2012

                                        _____
                                        John G. Koeltl
                                        United States District Judge



RECEIVED JAN 02 2010 CHAMBERS OF JOHN G. KOELTL U.S.D.J.

# United States District Court
# For The Southern District Of New York

-------------------------------------------------x

(faxed to Chambers @ 805-7912 on 12/31/2012 & mail)

UNITED STATES OF AMERICA,

        Plaintiff,                       03 Cr 00571 (JGK)

v.                                  *Motion for VACATUR of Judgment of Conviction grounded upon ab ovo deficit of interstate [§1341] jurisdiction over international deliverances [via air cargo export], divesting Federal Courts of adjudicatory powers [ex parte]*

FRITZ G. BLUMENBERG, ~~JOHN C. LEE~~,

CHRISTIAN T VIERTEL,    Defendants

-------------------------------------------------x

**COMES NOW**, Christian T. Viertel, defendant - mostly pro se - to file an <u>ex parte</u>

*Motion for VACATUR of Judgment grounded upon ab ovo lack of interstate [§1341] jurisdiction over <u>non-domestic</u> international document deliverance to Germany and similar other time-barred "non-relevant-document-exportation-conduct" abusively relied upon during sentence "enhancement" proceedings which trespassed the jury verdict.*

   i.   There is little inherently wrong with zealous prosecutorial charges as long as that zeal does not cross the line into violating defendant's constitutional rights or trespasses those jurisdictional <u>interstate limits</u> set by strict congressional zoning law's as set in stone in § 1341's statutory language. Here, the mail charge is off <u>by miles</u> never reaching the legal definition of the statute: "But while he may strike hard blows, he is not at liberty to strike foul ones." Ruled Justice Sutherland in Berger vs. United States, 295 U.S. 78, 88 (1935).

1

ii. "There is a canon of legislative construction which teaches Congress that, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States". *U.S. v. Spelar*, 338 U.S. 217 at 222[emphasis added]. Here, in §1341, Congress attached no modifiers but instead spelled out the historically grounded "*any private or commercial interstate carrier*" limit of this statute, in reiteration of its settled intent on the statute's *clean* and *strictly* domestic limitation demonstrated by subsequent use of the words "such carrier". The "wider" option, *argumendo*, as in: "interstate *and foreign* commerce" was deliberately left untouched by Congress in §1341 thus specifically barring the Judicial Branch from reviewing any aspect of the international deliverance or transport away from the United States under §1341. Transcripts demonstrate, Congress was not intended on other "larger" option. We do not require assistance from any Federal Court precedent when analyzing the plain meaning of the terms used by the government in its third count: "international carrier", as this a definitive clue, that "*we ain't close*" to §1341.

iii. §1341[1] : "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." (June 25, 1948,

---

[1] http://www.gpo.gov/fdsys/pkg/USCODE-2001-title18/html/USCODE-2001-title18-partI-chap63-sec1341.htm

2

ch. 645, 62 Stat. 763; May 24, 1949, ch. 139, §34, 63 Stat. 94; Pub. L. 91-375, §(6)(j)(11), Aug. 12, 1970, 84 Stat. 778; Pub. L. 101-73, title IX, §961(i), Aug. 9, 1989, 103 Stat. 500; Pub. L. 101-647, title XXV, §2504(h), Nov. 29, 1990, 104 Stat. 4861; Pub. L. 103-322, title XXV, §250006, title XXXIII, §330016(1)(H), Sept. 13, 1994, 108 Stat. 2087, 2147.) [emphasis added]

iv. Section §1341 (in all earlier versions and the 2001 version cited above, or in its current version) is <u>inoperative and inapplicable to **international** deliverance</u> that occurs "without" the United States into and in a sovereign foreign country [Germany] and §1341 is equally <u>inoperative</u> when any "*such*" non-interstate "*carrier*" was alleged to have been employed and was alleged to have been caused to have been employed, and is equally <u>inoperative</u> when "such" non-interstate carrier was drafted, as follows:

v. Indictment page 1[2] [see: COUNT ONE: <u>Conspiracy</u> , " 2) ...*At the end of each month, Burda Media sent to Burda Holding, <u>via an international freight company</u>, the <u>original</u> invoices submitted by the vendors.*"(emphasis added)],

vi. And on page 11 [see Appendix pages 1 & 11: "such matters and things, *to wit, FRITZ G.BLUMENBERG, JOHN C. LEE, and CHRISTIAN T. VIERTEL, the defendants, caused Burda Media to send from New York, New York to Burda Holding in <u>Offenburg</u>, Germany, <u>via an international freight company</u>, phony and inflated invoices that BLUMENBERG, LEE and VIERTEL submitted to Burda*

---

[2]

issued checks from its bank accounts at Chase Manhattan Bank in New York, New York, or gave cash to the vendors based on the invoices. At the end of each month, Burda Media sent to Burda Holding, via an international freight company, the original



3

*Media."(emphasis added)]* As charged in Count THREE [18 U.S.C. §1341,1346 and 2] in the <u>original</u> indictment "time-stamped" June 14, 2001. The conduct charged above (and below repeated) was <u>outside the statute's territorial limit</u> without conferring rights or imposing duties.

vii. And on page 1, 11, 12 of JAMES B. COMEY's "S1" indictment of Feb.14, 2002 which added counts for both *other* accused, but not for this applicant.

viii. And on "S2" for this applicant the substantive "international type mailing" was "dated and limited" to a <u>single</u> item : [Agate Invoice for] $8,120³:



---

³ The District Court resorted to DENIAL as regression into those dark ages which had deemed genuine and new information as sinful and as a punishable attack on intellectual rulers, even if axiomatic proof, exculpatory documents and sworn statements point otherwise contradicting the fabricated evidence presented at trial by the ruling government, all of them dot.gov-dependents. The Court's seriatim DENIAL of COMPULSORY/MANDATORY NOTICES OF OPEN & CLEAN PROOF which, inter alia fact & data-driven, underscored that mail-count-#3 was fatally corrupted, reached Kafkaesque levels of conscious avoidance to forego the destruction of a house of biased gov.cards:
a) <u>unidentified</u> "international freight company" was, in fact, LUFTHANSA GERMAN AIRLINES – a FAA licensed INTERNATIONAL AIRCARRIER **prohibited from providing UNITED STATES INTERSTATE CABOTAGE CARRIAGE**, thus a cargo/mail "Luftfrachtführer" entirely immune to §1341 engulfment, /con't FN Pg5

4

ix. Equally important to zee people of the United States and to non-residents and occasional alien visitor's are to understand what "duties" hundreds of thousands of public laws create. All U.S. diplomatic posts overseas issue VISAS, but just a few allow access to its "public" libraries which stock less than 2% of currently valid public laws in document format, but point to internet resources like http://www.gpoaccess.gov/plaws/, a site, which has expired. However, some worried public information officers at outposts point to Congress, where another newer site: www.crs.gov reports for "𝔗𝔥𝔢 𝔓𝔢𝔬𝔭𝔩𝔢". http://opencrs.com/document/94-166/2010-03-26/ is such a site, which openly excludes 18 U.S.C. §1341 from its analysis of "**Extraterritorial Application of American Criminal Law,** March 26, 2010 - 94-166".

x. Applicant- who acts as visitor pro se and is not lawyer'd-up - has warranted reliance upon congressional declarations. American Jurisprudence reality is hopelessly kept treacherous on "*Staatsraison*" grounds, and whether local defense counsel competes for the ineffectiveness [IAC] trophy, or CJAs are in a venal panic over poverty from less or no future CJA-jobs, or are spell-bound rent seekers under hyped-up toxic "air of kowtow to federal almightiness", fact remains that 2-branch-rich hydras constitute an adversarial government

---

b) DEPARTURE AIRPORT:was **OUTSIDE** of the Southern District of New York inside NEWARK NJ. At Liberty Airport (no pun intended),
c) DEPARTURE DATE 6/28/1996 WAS ALSO CHARGED WRONG: LH Flight 403 operating June 29, 1996 carried the "substantive document" air-cargo via Frankfurt to Munich on LH Flight 142/30 June 1996
d) ARRIVAL AIRPORT DESTINATION was botched and not "as marked" by this government charge, as the real arrival **was NOT** "Offenburg", but MUNICH AIRPORT, Germany
e) *addressee* was **NOT Burda Holding in Offenburg,** but M&M Air-Cargo in Munich Airport, Germany, and
f) "*original invoice*" charged as a $8,120 (Agate Invoice) - but **was not inside that export shipment at all**, because this once & only "Agate" fake printed by Burda Media's scriveners and certain other ORIGINALS were kept at Burda Media NY in expectancy of forensic auditors July 9, 1996

5

apparatus, which in this case played "clueless" what "interstate commerce" really defines, or, *argumendo*, those two dot.gov branches were the type of "scienter" Justice Sutherland calls "*foul*" actors [supra] whose bad faith resulted in powerful malfeasance.

xi. The Supreme Court issued its conclusions which Justice Scalia's tought to the Second Circuit in *Morrison vs National Australia Bank Ltd. Et al*, SCOTUS 08-1191 of June 24, 2010: "*It is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'*" EEOC v. Arabian American Oil Co., 499 U. S. 244, 248 (Aramco). **When a statute gives no clear indication of an extraterritorial application, it has none** "(emphasis added).

xii. "*The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words ... in search of an intention which the words themselves did not suggest.*" United States v. Wiltberger, 18 U.S. 76, 95-96, 5 L. Ed. 37 (1820) (Marshall, C.J.) was relied upon in the Second Circuit in 130 F.3d 547 (1997)

xiii. Haines vs Kerner, 404 U.S. 519, controls here and restraints obstacles in the procedural arsenal Federal Courts may no longer employ in its derailment of legitimate and substantial complaints as this one, which raise a very serious jurisdictional defect. See also : United States v. Ford, Dkt No. 03-1774 (2d Cir. Jan. 19, 2006) (Winter, Katzmann, Raggi): "*[R]estraint must be exercised in defining the breadth of the conduct prohibited by a federal criminal statute.*"[Op.at 14, emphasis added]

xiv. Once, as in this motion, the Court's jurisdiction over the charged "international" deliverance on June 28, 1996 to Offenburg, Germany is challenged under §1341's interstate limits, Courts have "no discretion to ignore the jurisdictional

6

challenge" and, moreover, when at any point in time the charging language states claims that are plainly recognizable from afar to have crossed the sacred line of the statute's jurisdictional fundamental boundaries of the domestic territory of the Continental United States, it is <u>incumbent on a Court to take action</u> <u>upon such discovery notice</u>, even if previously neglected, willfully ignored or just overlooked, or to act *sua sponte* in order to preserve the sanctity of constitutional rights and to insure that a conviction is not the product of any jurisdictional transgression, in particular when a case had multiple "learned" judges either failed to detect, chose to noiselessly countenance or willfully ignored jurisdictional violations at earlier stages. There are no time limits for jurisdictional challenges. The law of the case is void when res judicata does not trump facts and this jurisdictional challenge, which by itself may be brought at any time, like right now.

**Historical Background** - sans - official revisionism

a) This applicant (03) was indicted[4] jointly with Fritz G. Blumenberg (01), who, as the transcript revealed, was not only an alien in an unintelligent state of mind but remained blatantly unconvinced while being coaxed to plead guilty in 2002 of

---

[4] Circumstances and timeline inside the Moynihan United States Courthouse on June 14, 2001 are - unreassuringly - more than murky, as Magistrate Dollinger and peers were unavailable, were unwilling or were unable to "accept a BILL for filing" or they were not ready to render process to a putative "TRUE BILL" outside an OPEN COURT proceeding <u>which therefore could not get on record</u> of SDNY reporter(s) and thus became a non-event without calendar call ledger entry. Furthermore, due to this procedural void the loss of OPEN COURT PROCESS became a structural error that caused more structural errors impugning defendant's substantial constitutional protections when magistrates are foreclosed from picking a random Article III presider from the spinning barrel-'o-chance courts require to be uses. "Pre-ordainment" became the government's preference [for presider JGK]. The pretense that at one D.J. is just as impartial or unfair as another, is simply not true. That's what the barrel teaches. The barrel stood still on 6-14-2001.

7

"violations" of federal criminal laws he was untrained to even grasp, nor did he gain from VI. Amendment protections of having effective legal representation by a professional guide to indicate whether jurisdiction and the other elements of each "crime charged" were either satisfied or were not. His plea, in which he did not cop any acceptance or guilt for a conspiracy charge, inter alia, was constitutionally null and void as he later learned, and had also violated "Padilla's" IAC rules for alien pleas in case they entail unpronounced and undisclosed collateral extra-judicial-punishments, loss of old-age-SS-benefits. Later, Blumenberg withdrew ex parte for factual innocence of any break of federal laws once he had regained his intellect and reviewed his memory, facts and records. In 2010, from his German homeland, he effectively and irrevocably unilateral declared his withdrawal of plea for good causes.

b) Defendant (02) was the only American, John C. Lee, charged in those same conspiratorial "overt" acts and charged to have caused more of those deliverances overseas just as (01) and (02), but Lee was *unpremeditatedly* nolle prossed in July 2002 under a veil of secrecy to hide a magic wand competent counsel waived off stage (jurisdiction, time-barred conduct and constructive amendment) to keep the two untenable co-conspirators from discovery of the legal validity and the government happy. (reminder: *"Equal Justice for All"*)

c) An original June 14, 2001 indictment had hastily charged a "conspiratorial triple ham sandwich team" at its final hour, inter alia, with a federal criminal "vintage 1996" interstate mail *"violation"* pursuant to statute §1341; subsequent super-indictments maintained this charge while constructively adding additional charges for Lee and Blumenberg only, but not for this applicant, while simultaneously expunging the bogus three-way conspiracy charge. Other collateral "charges" under §371,2,1343,1346 were simple "USAM boilerplate" window dressing exercises to disguise time-barred commercial activity and are thus insignificant for this application.

8

d) The federal government's authority to charge material pecuniary fraud claims require a fundamental prong: FEDERAL JURISDICTION. Also required are venue and a local loss by a "domestic" complainant (a "referral"). <u>Upon review of corporate documents, the government found neither, because the conduct was international in nature and lacked a genuine local victim</u>. The official efforts to fabricate under Color of law commenced.

e) The government supplicated an entirely untenable "micro-economic theory" pursuant to which a "thirty plus year old New York domestic business corporation, named Burda Media Inc.[5] conducted entirely "charitable" news-gathering just like a "hobby" from luxury headquarters in Rockefeller Center. With a staff of 30, this $6+ million output-worthy Burda Media Boutique was colored to be hailed by the government as a "Not-for-Profit" outfit, despite lack of a charitable business <u>license</u> and a corporate NFP resolution to fit. Rube Goldberg, Esq. helped prepping these machinations for a Grand Jury.

f) The interstate commerce aspect of this case arises as the main prong of section §1341 offense. If that prong cannot be satisfied - and here it is unreachable - then all three defendants are not guilty. A nolle prossequi of just one - the hand picked American- out of three, is unconstitutionally unfair.

*g)* Also, a legislature could not plausibly be understood to have used the specific term of "interstate" [without any other description as in §1343, or like "foreign" or "international"] if it had not meant to refer only to the specific domestic boundaries of interstate carriers, couriers or transporters, like the USPS, over which Congress does have dominion. Congress well understood that it <u>holds no</u>

---

[5] a 100% subsidiary of a non-disclosed German corporation, uncomfortable for the prosecutors, which was later discovered to have been Burda GmbH, holder of all 200 "no par value shares" issued January 27, 1978. Burda Holding GmbH & Co.K.G. held no shares at any time, while it remains in the dark when the government decided to "botch" this material fact other than for clueless reliance upon foreseeably worthless advise by biased fellow bar members. The government often mistakes high hourly rates for integrity.

9

authority over the Universal Postal Union [www.utu.int ] which, as a United Nations agency, manages exclusively international mail matters for 191 member Nations from Bern, Switzerland. "This is not a circumstance," said Laurence H. Tribe, a law professor at Harvard "in which the courts have any plausible point of entry."

*b)* **Therefore the district court had no §1341[6] jurisdiction under 18 U.S.C. §3231 et al.**

𝕿𝖍𝖊𝖗𝖊𝖋𝖔𝖗𝖊, applicant moves based upon the foregoing, all the facts on record, plain language of the §1341 statute and for the resulting absence of jurisdiction ab ovo for VACATUR of the Judgment of conviction and for VACATUR of the underlying indictment.

Respectfully Submitted

*[signature]*

_____
Christian T Viertel, Def. 003 pro se


Copies of this submission were courtesy emailed to
USAO Preetinder Bharara, Counsel for Fritz Blumenberg.
Additional hard copy was mailed to the Pro Se Clerk
**Please file on DOCKET**

2 pages Appendix

---

[6] The federal mail-fraud statutes are "our Stradivarius, our Colt .45, our Louisville Slugger, our Cuisinart—and our true love," wrote former Assistant U.S. Atty. Jed S. Rakoff. "We may flirt with [other laws] and call the conspiracy law `darling,' but we always come home to the virtues of [mail fraud], with its simplicity, adaptability and comfortable familiarity," Rakoff wrote. "It understands us and, like many a foolish spouse, we like to think we understand it." **And sometimes, nobody does.** More by Rakoff: "I don't have any respect for judges who arrive at the result first, and then try to figure out some way they can bend the law to reach their particular predilections.".

10

**First and Last Page of the "Indictment":**

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    JUDGE KOELTL
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           DOC # ____
      - v. -                                              INDICTMENT

FRITZ G. BLUMENBERG,                              :    01 Cr.
JOHN C. LEE, and
CHRISTIAN T. VIERTEL,                             :

              Defendants.            01 CRIM. 571
- - - - - - - - - - - - - - - - - - x
```

(Filed JUN 4 2001, U.S. District Court, S.D. OF N.Y.)

### COUNT ONE

### Conspiracy

The Grand Jury charges:

### Background

1. At all times relevant to this Indictment, Burda Media, Inc. ("Burda Media") was a media company located in New York, New York. Burda Media was a wholly-owned subsidiary of Burda Holding, a German limited partnership, which had its

Burda Holding, a German limited partnership, which had its principal place of business in Munich, Germany, and offices in Offenburg, Germany. FRITZ G. BLUMENBERG, the defendant, was the President of Burda Media.

2. Burda Media contracted with numerous outside vendors which provided services to assist Burda Media's news-gathering operations. After work was performed, those vendors submitted invoices to Burda Media seeking payment. Burda Media issued checks from its bank accounts at Chase Manhattan Bank in New York, New York, or gave cash to the vendors based on the invoices. At the end of each month, Burda Media sent to Burda Holding, via an international freight company, the original

11

**Last Page (11) of the Indictment:**

be sent and delivered by a private and commercial interstate carrier, and would and did cause to be delivered by such carrier according to the directions thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, such matters and things, to wit, FRITZ G. BLUMENBERG, JOHN C. LEE, and CHRISTIAN T. VIERTEL, the defendants, caused Burda Media to send from New York, New York to Burda Holding in Offenburg, Germany, via an international freight company, phony and inflated invoices that BLUMENBERG, LEE, and VIERTEL submitted to Burda Media.

(Title 18, United States Code, Sections 1341, 1346 and 2.)

_____
Foreperson

_____
MARY JO WHITE
United States Attorney

CERTIFIED AS A TRUE COPY
THIS DATE 12/5/2005

11